IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br>1145 TAMARACK TRAIL<br>EAST RIDGE, TENNESSEE 37412 | Case No. 1:23-mj-156 |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Robert A. Cannon, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search of the real property located at 1145 Tamarak Trail, East Ridge, Tennessee 37412, hereinafter the "PREMISES," described fully and with particularity in Attachment A, and the search and seizure of items described in Attachment B.

2. I am a Special Agent (SA) with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (HSI), and have been employed as such since May 2018. I am currently assigned to the Office of the Resident Agent in Charge in Chattanooga, Tennessee. I have completed the Federal Law Enforcement Training Center Criminal Investigator Training Program and the HSI Special Agent Training Program. Prior to becoming an HSI SA, I was employed as a Police Officer with the Memphis Police Department in Memphis, Tennessee, from July 2007 until May 2018. In 2015, I received a Bachelor of Arts in Criminology and Criminal Justice from University of Memphis. As an HSI SA, I am authorized to investigate violations of the laws of the United States and have

Page **1** of **12**

the authority to execute warrants issued under the authority of the United States. I have received specialized training and conducted numerous, long-term investigations regarding a variety of criminal allegations, such as, but not limited to, possession, distribution and smuggling of narcotics; human smuggling and human trafficking; weapon smuggling and weapon trafficking; possession, distribution, and production of child pornography; money laundering; bulk cash smuggling; manufacturing and possession of explosive devices; and other related offenses.

3. I am a law enforcement officer as that term is defined by Title 18, United States Code, Section 2510(7), and empowered by law to conduct investigations and to make arrests with or without warrants for offenses made in my presence or when I have reasonable grounds to believe the person has committed or is committing a felony against the United States. I am also authorized under the United States code to carry firearms and make seizures of property as provided by law.

4. My supervisor is HSI Supervisory Special Agent (SSA) Arturo Napolitano. In addition to his fulltime employment with HSI, SSA Napolitano is a Lieutenant Colonel in the United States Army Reserve. He began his military career as an active-duty army officer in 2003 upon graduating Fordham University in Bronx, New York. Following graduation, he was commissioned as a 2nd Lieutenant in the Army Corps of Engineers and assigned to the 10th Mountain Division (LI) in Fort Drum, New York. He left the active-duty army in May 2007 but continued his military service in the Army National Guard and the Army Reserve, where he currently serves.

5. Between August 2005 and July 2006, SSA Napolitano was deployed to Baghdad, Iraq, where he served as a sapper platoon leader and sapper company executive officer for Alpha Company, 1st Brigade Special Troops Battalion, 1st Brigade Combat Team, 10th Mountain Division (LI). During his one-year tour in Iraq, SSA Napolitano led hundreds of combat

missions focused on locating and safely removing improvised explosive devices (IEDs) from the battlefield. These missions included leading route clearance patrols and escort and security patrols for explosive ordinance disposal teams while they destroyed and/or recovered IEDs from the battlefield. For his combat service, SSA Napolitano was awarded a bronze star medal, combat action badge, Iraq campaign medal (with two campaign stars), and overseas service ribbon. As a result of his combat service, SSA Napolitano was recognized by his battalion commander as the best platoon leader in the battalion and commended by numerous senior leaders, including the deputy commanding general of the 3rd Infantry Division.

6. As a soldier and federal law enforcement officer, SSA Napolitano has explained to me that he takes pride in his military and law enforcement service. During his eighteen years of military service and twelve years as a law enforcement officer, SSA Napolitano has accumulated numerous mementos including medals, commendations, a collection of old and current uniforms, plaques, photographs (digital and print), coins, thank-you letters, service records, and other items and memorabilia that are linked to his military and law enforcement service. SSA Napolitano knows that his fellow servicemembers and law enforcement colleagues often collect similar reminders or keepsakes. Therefore, I am aware it is common for persons who have had military and/or law enforcement service to obtain, collect, and maintain comparable items.

7. From my training, experience, and consultation with other law enforcement officers, I know that subjects have been able to exploit the lawful immigration, asylum, and naturalization processes of the United States to become naturalized United States citizens under fictitious or assumed identities.

8. From my training, experience, and consultation with other law enforcement officers, I know that subjects who create or assume identities often procure and maintain identity

documents to legitimize their created or assumed alias. In the twenty-first century, such identity documents are necessary to maintain an assumed identity and to continue to live under a created or an assumed alias.

9. During my law enforcement career, I estimate conservatively that I have executed over thirty residential search warrants in various roles including entry team leader, entry team member, scene supervisor, case agent, search team member, and evidence custodian/handler. Based upon this experience and my training and consultation with other law enforcement officers, I know it is common to find identity documents belonging to the occupants of a residence during the execution of a court authorized residential search warrant.

10. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement support personnel, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

11. Based upon the facts set forth herein, I submit there is probable cause to believe that Sead MILJKOVIĆ, also known as Sead DUKIC, committed violations of Title 18, United States Code, Section 1542, false statement in application and attempted use of passport, and the PREMISES contains evidence, fruits, and/or instrumentalities of the offenses, as described in Attachment B.

## RELEVANT LAW

12. 18 U.S.C. § 1542 provides in pertinent part:

> Whoever willfully and knowingly makes any false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States, either for his own use or the use of another, contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws; or

Page 4 of 12

Case 1:23-mj-00156-CHS   Document 2   Filed 06/06/23   Page 4 of 12   PageID #: 8

> Whoever willfully and knowingly uses or attempts to use, or furnishes to another for use any passport the issue of which was secured in any way by reason of any false statement—

## PROBABLE CAUSE

### Investigation Background

13. On February 9, 2022, HSI Chattanooga received information from HSI's Human Rights Violators and War Crimes Unit pertaining to naturalized United States citizen Sead DUKIC (hereinafter referred to as "DUKIC," DOB: November ■, 1971; POB: Velika Kladuša, BiH; Alien Registration Number A028 213 321).[1] The accompanying documentation indicated DUKIC was likely an assumed identity for Sead MILJKOVIĆ (hereinafter referred to as "MILJKOVIĆ," DOB: May ■, 1972; POB: Velika Kladuša, BiH; Alien Registration Numbers A71 727 450 & A75 158 142).

14. Additionally, HSI Chattanooga received a copy of an INTERPOL Red Notice (Control number A-7386/12-2011) indicating that authorities in Bosnia and Herzegovina (BiH) are looking for MILJKOVIĆ in connection with allegations he committed war crimes during the Bosnian War.

15. In furtherance of the investigation, SSA Napolitano reviewed the Alien Files ("A-Files") for MILJKOVIĆ and discovered that, in July 1996, MILJKOVIĆ applied to enter the United States as an immigrant and received an Alien Registration Number ("A-Number"). In the application, MILJKOVIĆ disclosed that he had served in the military in BiH and was deployed to the front lines. He was interviewed by United States authorities in Ljubljana, Slovenia, and he provided a sworn statement. On November 4, 1996, MILJKOVIĆ's application was denied because he did not meet the burden of proof to show eligibility for entry into the United States.

---

[1] Due to the nature of the allegations presented herein, the target's redacted date of birth and other identifiers are necessary to distinguish between his real and assumed identities.

16. In April 1997, MILJKOVIĆ again applied for immigration benefits and was assigned a new A-Number. In August 1998, MILJKOVIĆ's second immigration case was closed due to abandonment.

17. In July 1999, DUKIC applied to enter the United States and received an A-Number. In the application, DUKIC disclosed prior military service in BiH.

18. On September 10, 1999, DUKIC was approved for entry into the United States. He entered the United States on November 9, 1999.

19. The three A-Files related to MILJKOVIĆ and DUKIC contained relevant similarities. Notably, each of the A-Files has one or more photos attributed to the applicant. The photos in all three A-Files appear to be of the same person, showing arched eyebrows and prominent ears. The main differences in appearance can easily be attributed to age and weight gain.

20. On February 9, 2022, an HSI Chattanooga criminal analyst provided two images of MILJKOVIĆ and one image of DUKIC without any identifying information to the Tennessee Bureau of Investigation's Fusion Center and requested they identify matches, through facial recognition comparison, within the Tennessee driver's license database. Image one was from MILJKOVIĆ's 1996/1997 I-590 Registration for Classification as Refugee maintained by United States Citizenship and Immigration Services (USCIS); image two was provided by BiH as an attachment to the red notice for MILJKOVIĆ; and image three was from DUKIC's 2006 USCIS I-485 Application to Register Permanent Residence. The top matches for all three photographs were driver's license photographs associated with DUKIC. DUKIC's driver's license shows his address as 1145 Tamarack Trail, East Ridge, Tennessee, within the Eastern District of Tennessee.

21. On February 16, 2022, SSA Napolitano submitted three ten-print fingerprint cards for DUKIC and a copy of a BiH government identification card for MILJKOVIĆ, which contained a single right index fingerprint, to the HSI Forensic Laboratory for comparison. On that same day, an HSI senior fingerprint specialist provided a written report indicating the fingerprints submitted for examination belonged to the same person.

22. Based on the photograph and fingerprint matches, HSI determined DUKIC and MILJKOVIĆ to be the same person.

### DUKIC's Passport Application(s)

23. On April 25, 2022, SSA Napolitano received from the United States Department of State certified copies of DUKIC's Application for a U.S. Passport (DS-11), signed and dated on April 27, 2007, and DUKIC's U.S. Passport Renewal Application (DS-82), signed and dated on April 22, 2017. During this investigation, SSA Napolitano has consulted with Diplomatic Security Service SSA Katherine Langston regarding DUKIC's passport applications. Based upon a review of the aforementioned documents and in consultation with SSA Langston, SSA Napolitano learned the following:

24. On or about April 27, 2007, a male identifying himself as DUKIC submitted a DS-11 Application for a U.S. Passport (#311363393) to the authorized Passport Acceptance Agent at the East Gate Station in Chattanooga, Tennessee, within the Eastern District of Tennessee. The male claiming to be DUKIC swore to and affirmed the passport acceptance agent that all the information on the DS-11 application was true and correct.

25. The male claiming to be DUKIC claimed on the passport application that he was a United States citizen born on November ▆, 1971, in BiH. As proof of United States Citizenship, DUKIC submitted a Naturalization Certificate bearing serial number A028 213 321. As proof of identity, DUKIC submitted a Tennessee Driver's license bearing ID number

Page 7 of 12

Case 1:23-mj-00156-CHS   Document 2   Filed 06/06/23   Page 7 of 12   PageID #: 11

095383793 and the name Sead DUKIC. This information—including the date of birth and the Tennessee identification—was associated with the false personation of DUKIC and was fabricated.

26. The passport application had a question, found in box 20, requiring the applicant to list "what other names you have used? (Include Name Changes, Maiden Names, & Former Married Names)." The word "No" was written, indicating DUKIC's affirmation that he had not used any other names.

27. Based on the information provided in the passport application as part of the application process, a United States Passport (#424023423) issued to the man claiming to be DUKIC on or about May 2, 2007.

28. On or about April 22, 2017, a person identifying himself as DUKIC submitted DS-82 (#282937723), U.S. Passport Renewal Application for Eligible Individuals, by mail to the National Passport Processing Center. The person claiming to be DUKIC declared under the penalty of perjury, by signing his name on the DS-82, that the statements made in the application were true and correct.

29. The person claiming to be DUKIC claimed on the passport renewal application that he was a United States Citizen born on November ▮, 1971, in BiH. In support of the passport renewal application, DUKIC's United States Passport (#424023423) was mailed into the National Passport Processing Center with the DS-82 along with a check drawn on a First Tennessee bank account held by DUKIC and Suzana Dukic, DUKIC's wife, and listing 1145 Tamarack Drive, Chattanooga, Tennessee 37412, as the account's address. Zip code 37412 is the zip code for East Ridge, Tennessee. As before, this information—including the date of birth and the original passport—was false.

Page **8** of **12**

Case 1:23-mj-00156-CHS   Document 2   Filed 06/06/23   Page 8 of 12   PageID #: 12

30. The passport renewal application had a question, found in boxes 9A and 9B, requiring the applicant to "list all other names you have used (examples: Birth Name, Maiden, Previous Marriage, Legal Name Change, Attach additional pages if needed)." The person claiming to be DUKIC left that field empty, indicating he had not used any other names.

31. Based on the information provided in the passport application—false though it was—as part of the application process, a United States Passport (#572095213) issued to the person claiming to be DUKIC on or about May 21, 2017.

32. SSA Langston informed SSA Napolitano that all United States Passports are delivered to applicants by mail to the address listed in the Application for a U.S. Passport, or, if a renewal, to the address provided in the U.S. Passport Renewal Application for Eligible Individuals. The person claiming to be DUKIC listed 1145 Tamarack Trail, East Ridge, Tennessee, as his mailing address in the DS-11 (Application for a U.S. Passport) and DS-82 (U.S. Passport Renewal Application).

### Information about the PREMISES and vehicles

33. During this investigation, HSI learned that the man claiming to be DUKIC is domiciled at the PREMISES where he has access to two vehicles. This knowledge is based upon, but not limited to, the following information:

34. A records check indicated DUKIC has a current Tennessee driver's license bearing ID number 095383793, with a listed address of 1145 Tamarack Trail, East Ridge, Tennessee (the PREMISES). A 2001 Ford F350 bearing TN license plate number J311571 and VIN number 1FDWW36F21EA92279 is registered to DUKIC at the PREMISES.

35. On February 17, 2022, an HSI agent conducted drive-by surveillance of the PREMISES. The HSI agent observed two vehicles parked in the driveway of the residence. One

vehicle was registered to Suzana Dukic and the other to Sabina Dukic. DUKIC lists Suzana DUKIC as his wife and Sabina DUKIC as his daughter in his A-File.

36. On March 9, 2022, HSI Chattanooga, investigators from the Chattanooga Police Department, and a Customs and Border Protection Air and Marine Operations aviation unit, conducted surveillance on the PREMISES. During this surveillance, SSA Napolitano observed DUKIC at the residence along with females matching the description of Suzana Dukic and Sabina Dukic. SSA Napolitano further observed three vehicles at the PREMISES during the surveillance: the Ford F350, a Hyundai Santa Fe bearing Tennessee license plate number BDF7028, and a Ford Focus bearing Tennessee license plate number BDG8900. During this surveillance operation, DUKIC was observed driving the Hyundai Santa Fe bearing Tennessee license plate number BDF7028.

37. A records check indicated the Hyundai Santa Fe bearing Tennessee license plate number BDF7028 has a VIN number 5NMS23ADXKH076835 and is registered to Suzana DUKIC at the PREMISES. The Ford Focus bearing Tennessee license plate number BDG8900, has a VIN number 1FA6P0H75E5367595 and is registered to Sabina DUKIC at the PREMISES.

38. On April 13, 2022, a pole camera was deployed to observe the front of the PREMISES. The camera began recording on or about 9:31 a.m. on April 19, 2022. SSA Napolitano has periodically reviewed recordings of the pole camera and observed subjects matching the description of DUKIC and his wife Sabina Dukic frequent the residence.

39. On June 5, 2022, SSA Napolitano queried the Hamilton County Assessor of Property's website for addresses owned by DUKIC. Sead and Suzana DUKIC are listed as the owners of 1145 Tamarack Trail, Chattanooga, Tennessee, with a district of East Ridge. SSA Napolitano conducted additional open-source queries and learned that the same residence (1145

Tamarack Trail) is listed by different websites as being both in the city of Chattanooga and the city of East Ridge, within the Eastern District of Tennessee.

40. On June 5, 2023, HSI confirmed through visual surveillance and computer records checks that DUKIC still owns and resides at the PREMISES.

41. Based on my knowledge, training and experience as a Special Agent, as well as consultation with other law enforcement officers with similar backgrounds and experience, I am aware that individuals who have immigrated to the United States commonly retain documents and correspondences relating to their immigration status and applications, as well as other materials from their lives before coming to the United States and related to their immigration to the United States, which may reveal details about their real identity or inconsistencies about their immigration history. Specifically, individuals commonly retain immigration applications, filing receipts, photocopies of immigration applications/forms and supporting documentation as it relates to obtaining permanent residence in, and applying for citizenship in the United States, immigration to and from other countries, passports, visas, identity documents and foreign identification cards.

42. Similarly, I am aware that persons who are members, and former members, of military, police, and paramilitary organizations tend to retain nostalgic collections of paraphernalia and souvenirs relating to their service in military, police, and paramilitary forces. These collections may include, but are not limited to, such things as identification cards, documents, diaries, notebooks, media articles, open-source materials, records, certifications, photographs, personal video recordings, citations, pins, insignia, patches, trinkets, awards, medals, decorations, uniforms, clothing, equipment, or weapons. Based on my experience and common sense, such collections would be kept in a person's residence for safe keeping or display. These materials have significant sentimental or other value to the individual and/or their

family members. Similar documents and other items have been located pursuant to executed search warrants or consent searches in other law enforcement investigations. The materials may reveal details about the real identity of the man claiming to be DUKIC or inconsistencies about his immigration history.

43. Based on the facts set forth in this affidavit, there is probable cause to believe the PREMISES contains documents and other items for both the DUKIC and the MILJKOVIĆ identities and paperwork related to these identities as well as photographs or other evidence, including evidence of prior military service, that relates to the dual identities underlying the offenses of False Statement in Application and Use of Passport, in violation of Title 18, United States Code, Section 1542.

Respectfully submitted,

Robert A. Cannon
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this 6th day of June 2023

Christopher H. Steger
United States Magistrate Judge